Good morning. May it please the Court, I'm Janelle Welling. I represent plaintiff appellants. I'd like to reserve eight minutes for rebuttal, please. Okay. You try to keep track of your time. We'll try to help. Thank you. I know the Court's familiar with the briefs, and so I'm not going to repeat anything there. But I do want to expand on the discussion of materiality, because materiality really does explain the differing outcomes in Doherty, and it does explain the outcomes as a gatekeeper in Clemens and in Buller and the Rush cases that were submitted as supplemental authority. My ultimate point for the Court is that this Court should uphold plaintiff's second amended complaint, because materiality is appropriately pled, and that this Court can do so without creating new law or extending existing law. Now, the Court, I'm sure, is aware that the test in California for materiality is whether a person would attach importance to the existence or nonexistence of a fact. In the omissions context, what that means is had a reasonable person known of it, they would have done something differently. And because of the logical connection between what the consumer choice would be in the transaction, Barden and Doherty and Falk cases all look to whether and what was said about the reasonable expectation. Now, in Doherty, of course, the plaintiffs did not plead any expectation about the engines at all, and materiality was not met. In Barden, again, the plaintiffs did not plead any expectation about the materials used in the manifest, Falk manifolds, and materiality was not adequately pled. Falk, on the other hand, the plaintiffs adequately pled that they expected the speedometers to last for the length of the time that they owned the car, and materiality was adequately pled. So is your argument that although there was a limited warranty here, that a consumer nonetheless had a reasonable expectation that the inverter would not fail less than, what, 5 years, 4 years, 3 years? Correct. What was pled here is that the expectation is that the computers would function for at least 5 years, that inverters have a 50,000 boot-up life, which is longer than 5 years. If that's the case, then how could a manufacturer ever limit its warranty? A manufacturer may limit a consumer's expectation. It just must do so clearly, and let me give you an example. A diving watch, deep-sea diving watch, a manufacturer can say, this watch is rated for 50,000 meters. If a consumer buys it and wants to go to 75,000 meters, the consumer then ought not be able to come in and complain, hey, I expected this to go for 75,000 meters, because the manufacturer did specifically put a limit on that expectation. They said 50,000. Isn't there a 1-year limit here? No. The representation in the warranty of 1 year does not say your computer will only function for 1 year. But it says that if it breaks down in that year, we will repair or replace it at no charge to you. Sure, which does not at all limit a consumer's reasonable expectation that the computer will continue to last. So when I buy my car with a similar warranty and the manifold fails after 6 months, my expectation is not that the manifold will last at least a year. It is that the carmaker will repair or replace the manifold during that 1-year period, 1,000 miles, whichever comes first, at no cost to me. What your question raises is, I think, an essential point for this Court, is that each warranty, each contract really needs to be taken on its own terms. The courts need to be looking at what is the promise made or the promises made. And the automobile warranties that have been articulated in Abraham and Doherty, Barden, to some extent Clemens, HP made very different promises than those car companies did. And one of the very different promises was the free-from-defect promise. Now, we know that under Hicks v. Kaufman-Broad, that when a manufacturer makes a promise that's free-from-defect, that the part need not malfunction before a claim is proper, that malfunction is not an element. So when HP promised these would be free-from-defect, the temporal limit of a year, considering that plaintiffs have pled that they were substantially certain to fail, which is what Hicks says, then there was an in-warranty breach. This is not like a Doherty of an outside, hey, I want to repair 50,000 miles later. This is an in-warranty breach of the promise to be free-from-defect. So the materiality is really a critical point because what materiality has done in the past and continues to do as a standard here is act as a gatekeeper so every product malfunctions. At what point would you allege that the manufacturer would be on notice that the part would fail? Every part fails at some point, doesn't it? Correct. So the question is, if it got only three calls out of 100,000 sales, would that be enough to put it on notice? Hicks says that it must be substantially certain to fail. And we've pled that here, and not just the conclusion that it's substantially certain. I thought the evidence in the record was 6.8 percent of calls to the service center dealt with a monitor problem. The primary evidence that's the primary pleading on the substantial certainty is the fact that HP, during warranty, declared a class-issue defect, called in, it invoked its contractual relationship with its OEM and said, this part is not performing. You now pay for it. This is class-wide problem with these computers. But is that a warranty-related issue, or is that a quality control issue that the manufacturer has made a determination internally that where the failure rate exceeds, let's say, 5 percent, that it will then take steps with its engineers to try and figure out what's causing the problem and then go back to the component manufacturer and say, hey, there's a problem here with your quality control, and we demand that you fix it. That doesn't necessarily mean that the manufacturer is substantially certain that the part will fail. It just means that the manufacturer is unhappy with the quality control. And HP should be welcome to make those arguments to the jury. But what the law in California is – But you're trying to convince me that 6.8 percent is enough to put the manufacturer on notice that it has a substantial problem. 6.8 percent doesn't seem very high to me. No, what I'm trying to convince you is that when you have rational economic actors like you do with the OEM and HP, reaching a contractual agreement about who's going to be financially responsible, that the rational interests of those actors are to make sure – the OEM wants to make sure that that number's not so low that it's picking up all the one-offs that you might expect. Let me ask a different question, but it kind of tees off of the 6.8 number. What do we know about the failure rate and over what time period of these inverters? I mean, the 6.8 is the number of calls that come into a call center, but we might know more than that. Do we know more than that? What is available in the pleading, instead of going beyond to what I may know, is that HP knew and declared this class issue and called in to make the OEM pay for it before either of these plaintiffs purchased their computers. The computers were released in the end of 2001 and throughout 2002, and so it was early in the stream of commerce that HP made this declaration about its computers. But do we have any real notion as to the failure rate of this inverter and over what time period? Other than HP felt it was important enough for it to internally make sure people knew and corrected it and call in to make sure the manufacturer paid for it, there's not in this pleading the knowledge of failure rates, no. And you're basically saying substantially certain to fail? I mean, that's the allegation? That's correct, and under Hicks, that's what states the breach. Whether the product is functioning or not goes to remedy. But counsel, under Hicks, it was alleged that all the products would fail. Here it is alleged only that the notebooks that belonged to the plaintiffs would fail. I would like to answer Your Honor's question, and I see I'm getting low on my time. You know, this one and the next one overlap in some ways, and they're difficult questions of state law. Why don't you just answer? We'll use as much of your time as we need, and we'll make sure you get a chance to respond, so don't worry about it. Thank you. What Hicks says is that in discussing this issue of what is a substantial certainty, the one thing that Hicks does say is that 100 percent is not what is going to be the standard for substantial certainty. It says that no expert, no credible expert, would come to court and truly opine that it's 100 percent. So Hicks does not set a threshold for substantial certainty at 100 percent, nor does it require there to be that level. Instead, what it requires there to be an inherent, the allegation of an inherent defect that is substantially certain to prematurely shorten that useful life. And in that instance, you stated a claim for a breach of the promise to be free from defect, which is a unique promise that HP made here, different from promises that the car manufacturers have been making in their warranties. The need to look at each contract on its face and in its terms is important, and it's something that this Court recognizes. And it's something that makes Clemens indeed different from what I believe this Court needs to follow in my case, in that Clemens also did not involve in a breach of the promise. Suppose that the evidence that the manufacturer had was that the inverter was almost certain to fail 18 months after the computer was sold. Would your argument still be the same in light of a one-year warranty, that there was an obligation to notify? Of course, because it's a material fact to the consumer. That's why materiality is the important component on the consumer protection side to consider. That HP knew that these were going to fail, and internally did everything it could to make sure it didn't pay for it, but didn't say anything to the people that were buying the computers. I'm not sure where your five-year figure comes from, but, you know, why shouldn't it be two years or three years in this day and age that technology is not moving so fast that computers are obsolete? The obsolescence of maybe you need more memory or an upgraded software, that would tend to be, I think, considered more of the three-year turnaround. In terms of the natural degradation of components that might happen to a unit, as we've pledged, the industry standard is five years on that. And so we're not complaining that, gee, now we're out of date and can't sync our iPods. We're complaining that the components aren't supposed to naturally degrade on their own, that this is premature. And HP knew it was premature, and still didn't say anything about that important fact. Okay. Why don't we hear from the other side? And you've got a little over two minutes, but we'll make sure you get enough chance to respond. Thank you. May it please the Court. My name is Gordon Cooney, and I represent Hewlett Packard Company. A manufacturer that agrees to repair or replace a product for a finite period does not violate California law if the product delivers the warranted performance during the warranted term. The warranty term here both sets the contractual obligation of HP and also the buyer's expectation. That's what Doherty holds. Well, this is tricky, actually, because California law seems to want it both ways. It's clear that if this had failed within the express warranty period, you'd be on the hook, you would have paid, you're not fighting about that. If it fails outside the express warranty period, the customer could have bought a longer warranty, and had he bought a longer warranty, you would have paid that as well. That I just take as a given. And I'm not asking you to concede anything factually about your computers, so let's imagine just some other product, that the express time-limited warranty is for a year. The reasonable expectation of the customer is that the product under normal use, well, you know, it may fail, it may fail at 5% over the next five years, that's just what everybody kind of understands about this product. But, in fact, this particular product is virtually guaranteed to fail in about 18 months. They bought the one-year limited warranty, the reasonable expectation of any consumer with respect to this product is that it will last quite a lot longer than 18 months. Has that company violated either an express or implied warranty of merchantability? No, Your Honor, and I think Doherty actually addresses that, because what Doherty says is that given the terms of the warranty, quote, the only expectations buyers could have had about the engine was that it would function properly for the length of the manufacturer's express warranty. So I think what Doherty is saying is that the warranty both sets forth the contractual obligation... Yeah, but you see, Hicks doesn't do that at all. In Hicks, we've got that mesh that in certain houses isn't going to work perfectly. It's going to work great until they get some event that makes the darn thing crack. And we're outside the warranty period, it hasn't cracked yet, and the court in Hicks says, sorry, that's a violation of the warranty. And what's crucial here, Your Honor, is in the Hicks opinion, the Hicks took great pains to say that there are certain kinds of products that have, quote, an indefinite lifespan, and it said that foundations of homes are a type of product that has an indefinite lifespan. It expressly distinguished other products, two that it identified were cars and tires, that they said they wind up on the trash heap after a certain period of time. They're different. They're different from foundations from homes. So I think you have the Hicks line of cases that deals with products that have an indefinite lifespan, and that's what the case says. But if you have the other line of cases... But if you're right, if your argument is right, we can have someone selling a product that, generally speaking in the market, everyone understands, is likely to fail at a fairly low rate, maybe 5% of the entire product line for five years, and then after that, everybody knows they kind of fall apart. But if that company, knowing that this particular product is actually defective, much below the ordinary industry standard, says nothing about that, and offers a limited warranty of one year, they're not on the hook for having deceived the customer or having sold them a product that they knew would not actually meet the expectations. That's your argument. I think that is correct, Your Honor. If you separate the prongs, I think this Court in Clemens, Doherty, and also in the Barden case say, no question, that's not a breach of warranty claim. The warranty is for a finite period of time, and that period of time is set by the warranty. I find that argument much easier to accept if we're talking about express warranty. I find it a slightly harder argument if we're talking about implied warranty of merchantability. And there is no implied warranty claim here, Your Honor. The claim here is an express warranty claim and a CLRA claim and a UCL claim. So what we're talking about is the express warranty. Or we're talking about the California consumer protection laws, and the cases that construe those laws talk about whether there's a duty to disclose. And I think Doherty speaks to this very clearly and says, in the absence of a contrary representation where the omission would make the representation misleading, or in the absence of a safety issue, there is no duty to disclose that arrives here. And Doherty doesn't turn on materiality. It turns on the fact that the warranty sets both the contractual obligation and the expectation. And if you think about the consequences, Your Honor, you think about the consequences of adopting plaintiff's argument here, it would effectively mean that plaintiff could just simply circumvent the limitation in the express warranty by alleging what the plaintiffs have alleged here. And the consequence of that would be that you would have manufacturers defending countless cases against these kinds of obligations. As the Court recognized, a party has an ability to purchase an extended warranty if the party so chooses. What the plaintiff wants is an extended warranty in this case without paying for it. That may be attractive in the short run, but in the long run what that will do is drive up the price of products. So I think if you look at the express warranty claim, the express warranty claim is clearly addressed by Clemens and Doherty. With respect to the statutory claims, if you will, the question there really becomes, is there a duty to disclose? And Doherty speaks to that. The question is, were there expectations set? And the plaintiffs are trying to ---- Let me ask you this. Again, I'm not asking you to concede that these are the facts of your case. So don't worry that I'm sort of maneuvering you into a corner in that way. Let's assume that the manufacturer knows that this product is likely to fail, very likely to fail, within 18 months. And that the reasonable expectation of a consumer out there, absent an explicit statement by the manufacturer, is that this product and this category of product will last about five years. So we know that it's going to fail in substantial numbers in 18 months. We know the consumer is thinking something else. Is there any obligation under California law for the seller of that product to inform the consumer that what the manufacturer knows full well? Well, I think what your hypothetical, I think, adds in this instance is the idea that the manufacturer knows that the consumer believes that their expectation is that the product will not just fail, but operate without incident for some period of time. Well, no, I don't mean that. I mean, the expectation of the consumer that I'm hypothesizing is that the failure rate on this for the first five years is very low. It does happen. You know, nothing's perfect. But that after five years, all bets are off. I would argue, Your Honor, that under Doherty, there is no duty to disclose. I would also argue those are not the facts of our case. Well, listen, I went in with that. I'm staying with that. These are not necessarily the facts of your case, and I'm not asking you to concede that. But you're saying that if the manufacturer knows that there's a very high likelihood of failure in 18 months, and that the consumer has quite a different expectation, the manufacturer, nonetheless, has no obligation to inform the consumer. And the reason why I say that, Your Honor, is because the warranty, I think, sets forth both the contractual obligations and speaks to the consumer about what the consumer can reasonably expect from this product, from this manufacturer. It may be that the consumer will see that. That one goes too far for me. I mean, you may still be right on my hypothetical, but I don't think you can simply rely on the existence of a warranty, because that will protect various manufacturers from what might be, in fact, exceedingly misleading and unethical behavior. Again, not necessarily your case. I'm not asking you to concede that. But I'm hypothesizing the manufacturer knows this product's going to fail in substantial numbers in 18 months, knows that the consumer thinks otherwise, knows the consumer wouldn't buy it if it knew the truth, that you're saying the manufacturer can protect itself by saying, well, we're going to give you a one-year warranty. And I think if one looks at Doherty and looks at what Doherty defines as the duty to disclose, it talks about essentially two things in the absence of a fiduciary relationship. It speaks to where there's an express representation by the manufacturer where the omission becomes, makes that representation misleading or an issue relating to safety. Apart from that, what Doherty says is there is not a duty to disclose. And I think that becomes particularly compelling when the manufacturer has made a disclosure and said, this is the extent of protection that we're providing for this particular product. The consumer can then decide, do I want this product? Do I want somebody else's product? Do I want an extended warranty? What do I want to do? I think one of the flaws in the argument here is that we're trying to create expectations without regard to what the manufacturer is actually responsible for. The manufacturer is saying in its warranty, here's what we're prepared to be responsible for. You decide whether you want to buy my product or not. You decide whether you want to buy my extended warranty or not. But in the abstract, there's no way that you can say under California law that if a manufacturer makes an express and time-limited warranty, there are no other things the manufacturer is responsible for. That's simply not California law. The question is, what additional things might they be responsible for? Well, certainly there may be other things in connection with its conduct that it's responsible for. But I think that in thinking about expectations here, what Doherty is at least saying is, those expectations are being created. They're being created by the warranty. And what it says is, the only expectations that the consumer could have had, that's what it said, could have had, was set by the terms of the warranty in question. Counsel, was there any claim of a breach of implied warranty? Well, Your Honor, I don't believe so. And I don't think that in any event the warranty here sets forth, even if there were an implied warranty claim here, the warranty here sets forth the extent of the company's obligation. And certainly the limited warranty, the express terms of that, can modify and at least cabin the extent of the company's responsibility for a period of time. So I think that the temporal limitation in the express warranty would speak not only to any express warranty claim, or it would also speak to an implied warranty claim. And what the plaintiff says to me ---- It might well be true, but going back to Fletcher's hypothetical, it's not hypothetical in this case that the company knew that these inverters would fail to the extent that they asked the manufacturer of the inverters to replace them at no cost to the company, and then I assume later on after the year charged the customer to buy a new one. So we have an additional fact beyond Doherty here where the company, at least there's evidence enough to make a claim that the company knew and therefore would have a duty to disclose. Are you saying that is not this case? Your Honor, I think what is alleged in the complaint was that there was an understanding between HP and the component manufacturer that, as the court suggested, if there were failures above a particular quality control threshold, there would be an allocation of risk as to who would take care of that. It's a far cry to say there's that kind of risk allocation taking place, which is typically done at a very low threshold on the one hand, and substantial certainty of failure on the other hand. So I think there is a significant, significant gap between the two of those things, Your Honor. Thank you. So in conclusion, we believe that the court should affirm the judgment below. It is fully consistent with California law. Actually, let me just address one other thing. The plaintiffs have submitted the Rutledge case to the court. I want to make sure I address the Rutledge case. It wasn't raised in argument. But the Rutledge case, it's important to note, is in a very different procedural posture than this case. That case was decided on class certification, and the California class certification standard is applied differently than under the federal rule. Under the California rule, the court is not allowed to look at either the legal or the factual merits of the case in deciding class certification. The appellate division's opinion in Rutledge takes great pains to say they're not deciding whether Hicks applies or whether Doherty applies. All they're saying is on class certification, they're bound to apply the test that was articulated by the plaintiffs. So I didn't want to leave that unaddressed. It was raised in a 28J. It wasn't briefed. I wanted to make sure I had an opportunity to at least address it. I think that the Doherty court has a quote from the trial court that's appropriate here, and they say in that opinion, opening the door to plaintiffs' new theory of liability would change the landscape of warranty and product liability law in California. Failure of a product to last forever would become a defect. A manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself. If the consumer wanted an extended warranty in this case, the consumer could have purchased it. Not only is the district court's opinion here consistent with California law, but accepting plaintiffs' invitation in this case would have the effect of increasing prices for consumers in California. Thank you. Thank you. Thank you. There are three points I think that are important to emphasize after that discussion. The first is that this fear of widespread litigation is really misplaced, and that's the point of what materiality does, is that it differentiates when there's no expectation or no reasonable expectation and when there is one. In this case, unlike Doherty, a reasonable expectation was pled. There was no reasonable expectation pled in Doherty. First difference between this case and Doherty. Now, in the absence of that kind of pleading, the court filled in the expectation with the warranty term. That warranty was a repair-only warranty. Again, different from my case. H.P. promised free from defect, a second different promise that can control or relate to expectations. In making that promise, H.P. did not say it will only last one year. That is not what they said. Had H.P. said that, a reasonable consumer could have said, I expect more from my computer. I think I'll go buy a Dell. But that's not what H.P. said. H.P. can control consumers' expectations, but it did not through that language. But to the extent, as my colleague wants to say, that a warranty speaks to a consumer about what to expect, let's look at what H.P. spoke to the consumer. The warranty is in the record at 468, but the first sentence is the promise that it's free from defect. The third sentence is, if H.P. receives notice during the warranty period, it will repair or replace products. So what it did tell the consumer is, hey, if we know something during the warranty, we will repair or replace products. It did not say, if you, consumer, tell us about a defect, we'll replace your product. But aren't you ignoring paragraph 3? H.P. does not warrant that the operation of H.P. products will be uninterrupted or error-free. In fact, paragraph 3 supports plaintiff's position, because if you continue reading that if H.P. is unable, within a reasonable time, to repair any product to a condition as warranted, what is that condition? That condition is free from defect. H.P. says free from defect is not about functionality. It's about substantial certainty. And we've pled the substantial certainty. We've pled the expectation. We have in-warranty failures, in-warranty knowledge. This case is not a Doherty case. The differences between the warranties and understanding and treating this contract on its own and different from what the automobile manufacturers do, different from what hair dryer manufacturers may do or lawnmower manufacturers, not every warranty, there's no warranty store where you just stuff it in a box. They make different promises, and H.P. made different promises here. Thank you. Thank you both for a useful argument. Long v. Hewlett-Packard now submitted for decision.
judges: Nelson, Fletcher, Tallman